UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

LIZETTE GONZALEZ,

        *Plaintiff*,

   -against-                     **MEMORANDUM AND ORDER**

                                    19-CV-2848(KAM)

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Lizette Gonzalez ("plaintiff") appeals the final decision of the Commissioner of the Social Security Administration ("defendant" or the "Commissioner"), which found that plaintiff was not disabled, and therefore not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act").  Plaintiff and the Commissioner both moved for judgment on the pleadings.

        For the reasons herein, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## Background

        The parties in this case have filed a joint stipulation of facts that appear in the record, which the court

incorporates by reference.  (*See generally* ECF No. 15-1, Joint

Stipulation of Facts ("Stip.").)  The court will briefly recount

the factual background here only to the extent such facts are

relevant to the parties' pending motions.

On May 19, 2015, plaintiff went to the emergency room,

complaining of left shoulder and knee pain after falling out of

a car.  (*Id.* at 4.)  At the hospital, x-rays revealed minimal

subacromial osteophytosis, also known as "bone spurs."  (*Id.*)

On February 3, 2015, plaintiff began treatment with

Dr. Laximidhar Diwan, a board-certified physician, who observed

restrictions in plaintiff's range of motion in both her cervical

spine and left shoulder.  (*Id.*)  More specifically, Dr. Diwan's

examination notes revealed tenderness at the C4-C5 and C5-C6

levels in plaintiff's spine, with a cervical range of motion in

all planes of 25 degrees (with 45 degrees being normal).  (*Id.*)

Furthermore, Dr. Diwan noted tenderness in plaintiff's left

shoulder, where flexion was 100 degrees (170 being normal) and

abduction was 100 degrees (180 being normal).  (*Id.*)  Dr. Diwan

referred plaintiff for an MRI of her left shoulder, which

revealed cuff tendinosis/tendonitis of the infraspinatus and

supraspinatus tendons.  (*Id.* at 5.)  Based on the February 2015

examination, Dr. Diwan opined that plaintiff was totally

disabled, and Dr. Diwan maintained that opinion over the course

of various examinations of plaintiff through January 13, 2016. (*Id.* at 4-5.)

Beginning on June 29, 2015, plaintiff sought treatment from Dr. Perry Drucker, a board-certified physician. (*Id.* at 5.) Dr. Drucker found tenderness in plaintiff's shoulder and reduced flexion, extension, abduction, and internal rotation strength. (*Id.*) Dr. Drucker reaffirmed these findings in August 2015 and September 2015. (*Id.* at 6.) On November 18, 2015, Dr. Drucker administered a steroid injection into plaintiff's shoulder. (*Id.*) Dr. Jack D'Angelo, a physician in the same practice with Dr. Drucker, administered a trigger point injection on February 16, 2016. (*Id.*) On December 6, 2017, Dr. Drucker completed a Disability Impairment Questionnaire. (*Id.*) He reported that he treated plaintiff monthly, between July 1, 2015 and December 6, 2017. (*Id.*) Dr. Drucker opined that plaintiff was restricted to sitting for one to two hours in an eight-hour workday, and standing or walking for one to two hours in an eight-hour workday. (*Id.* at 7.) Dr. Drucker further opined that plaintiff should never lift or carry more than five pounds, and that plaintiff could never grasp, turn, or twist objects with her left hand, never use her left hand or fingers for fine manipulations, but could occasionally use her right hand and fingers for fine manipulations and for reaching. (*Id.*) Contemporaneous treatment notes showed tenderness in plaintiff's

3

shoulder upon palpitation, reduced flexion, rotation, extension, and strength in her left shoulder, and reduced flexion extension, and rotation in her cervical spine. (*Id.*) Dr. Drucker noted similar findings as of January 3, 2018. (*Id.*)

From March 2017 through November 2017, plaintiff sought treatment from Dr. Mohammed Ibrahim. (*Id.*) Dr. Ibrahim opined that plaintiff had limitations in terms of sitting, standing, walking, lifting, and carrying; that she could never use her arms for grasping, turning, twisting, or fine manipulation; and could never use her left arm for reaching, but could occasionally use her right arm for reaching. (*Id.* at 8.) Dr. Ibrahim further opined that plaintiff would need to take unscheduled thirty-minute breaks every hour, and would likely miss work three times per month due to her impairments or related treatments. (*Id.*)

Plaintiff first filed applications for Social Security Disability and Supplemental Security Income benefits on October 8, 2015, with an alleged onset date of May 19, 2015 (*i.e.*, the date she first went to the emergency room). (*Id.* at 1.) On November 24, 2015, Dr. Sujit Chakrabarti conducted a consultative examination of plaintiff. (*Id.* at 8.) Dr. Chakrabarti assessed a dislocated shoulder with possible internal derangement of the left shoulder, but offered no opinion regarding plaintiff's functional limitations. (*Id.*)

4

Dr. Chakrabarti did not review any x-ray reports as part of the examination. (*Id.*)

Plaintiff's claim for benefits was denied, and on January 13, 2016, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 1.) A hearing was before ALJ Dina R. Loewy on February 1, 2018 in Jersey City, New Jersey, at which plaintiff and a vocational expert testified. (*Id.*) In a decision dated March 29, 2018, the ALJ found that plaintiff was not disabled. (*Id.*) Thereafter, on March 19, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's decision, which rendered the ALJ's decision the final decision of the Commissioner. (*Id.* at 2.) This action in federal court followed. (*See generally* ECF No. 1, Complaint.)

## Standard of Review

A claimant must be "disabled" within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or

engage in any other kind of substantial gainful work.  42 U.S.C.
§ 423(d)(2)(A).

The regulations promulgated by the Commissioner set
forth a five-step sequential evaluation process for determining
whether a claimant meets the Act's definition of disabled.  *See*
20 C.F.R. § 404.1520.  The Commissioner's process is essentially
as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that [s]he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in [her] prior type of work,
> the Commissioner must find [her] disabled if (5) there
> is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting
*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003));
*accord* 20 C.F.R. § 404.1520(a)(4).  If the ALJ determines that
the claimant is or is not disabled at any step, the analysis
stops.

"The claimant has the general burden of proving . . .
his or her case at steps one through four of the sequential
five-step framework established in the SSA regulations."
*Burgess*, 537 F.3d at 128 (quotation and citations omitted).
"However, because a hearing on disability benefits is a
nonadversarial proceeding, the ALJ generally has an affirmative
obligation to develop the administrative record."  *Id.*

6

(quotation and alteration omitted).  "The burden falls upon the
Commissioner at the fifth step of the disability evaluation
process to prove that the claimant, if unable to perform her
past relevant work [and considering his residual functional
capacity, age, education, and work experience], is able to
engage in gainful employment within the national economy."
*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

     "The Commissioner must consider the following in
determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings]; (2) diagnoses
or medical opinions based on such facts; (3) subjective evidence
of pain or disability . . . ; and (4) the claimant's educational
background, age, and work experience.'"  *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If
the Commissioner finds a combination of impairments, the
Commissioner must also consider whether "the combined effect of
all of [a claimant's] impairment[s]" establish the claimant's
eligibility for Social Security benefits.  20 C.F.R. §
404.1523(c); *see also id.* § 416.945(a)(2).

     Unsuccessful claimants for disability benefits may
bring an action in federal court seeking judicial review of the
Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g),
1383(c)(3).  The reviewing court does not have the authority to

conduct a *de novo* review and may not substitute its own judgment
for that of the ALJ, even when it might have justifiably reached
a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir.
2012). Rather, "[a] district court may set aside the
Commissioner's determination that a claimant is not disabled
only if the factual findings are not supported by 'substantial
evidence' or if the decision is based on legal error.'"
*Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at 131
(citation omitted)). "The substantial evidence standard means
once an ALJ finds facts, [the court] can reject those facts
'only if a reasonable factfinder would *have to conclude
otherwise*.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d
Cir. 2012) (citations omitted, emphasis in original). Inquiry
into legal error requires the court to ask whether "'the
claimant has had a full hearing under the [Commissioner's]
regulations and in accordance with the beneficent purposes of
the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112
(2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d
Cir. 1990) (second alteration in original)).

## Discussion

### I.   The ALJ's Decision

The ALJ in this matter followed the five-step
sequential process, as mandated by the Act's implementing
regulations, to determine whether plaintiff was disabled.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 19, 2015, the alleged onset date. (ECF No. 16, Administrative Transcript ("Tr."), at 12.) At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative changes of the left shoulder and degenerative disc disease of the cervical spine. (*Id.*)

At step three, the ALJ determined that from the alleged onset date in 2015 through the date of the decision, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* at 13.) The ALJ found that plaintiff's shoulder impairment did not meet the criteria in listing 1.02(B) because there was no evidence of significant limitation with regard to her right shoulder. (*Id.*) Furthermore, the ALJ found that plaintiff's spine impairment did not meet the criteria in the listing because the objective evidence in the record did not indicate compromise of a nerve root. (*Id.*)

At step four, the ALJ concluded that the plaintiff was unable to perform any of her past relevant work as a laundry attendant, based on the vocational expert's report that a person

with plaintiff's residual functional capacity ("RFC") could not perform her past work.  (*Id.* at 15.)

Furthermore, the ALJ determined that plaintiff had the RFC to perform "light work," as defined by the Act's regulations.[1]  (*Id.* at 13.)  The ALJ determined that plaintiff could perform "light work" with the following limitations: the ability to lift and carry up to ten pounds; the ability to push and pull less than ten pounds of force; the ability to occasionally climb ramps and stairs; the inability to climb ladders, ropes or scaffolds; the ability to occasionally balance and stoop; the inability to kneel, crouch, or crawl; the ability to occasionally reach with the left arm; the inability to reach overhead with the left arm; the ability to occasionally handle and finger and frequently feel; and the need to avoid all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery.  (*Id.*)

---

[1] Under the regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ considered, *inter alia*, the medical opinion evidence proffered by the three treating physicians from whom plaintiff sought treatment (Dr. Diwan, Dr. Drucker, and Dr. Ibrahim). (*Id.* at 14-15.) The ALJ accorded "little weight" to Dr. Diwan's "consistent[]" opinion that plaintiff was totally disabled, finding it to be overly broad given the moderate objective findings and range of motion limitations. (*Id.* at 15.) The ALJ found that Dr. Diwan's exam notes appeared consistent with a finding that plaintiff could lift and carry. (*Id.*) Furthermore, the ALJ found no support in Dr. Diwan's notes for limitations on sitting, standing, or walking that might preclude light exertion. (*Id.*) The ALJ also accorded "little weight" to the opinions of Dr. Drucker and Dr. Ibrahim, finding that both opinions were inconsistent with the record, and that, although plaintiff would be "significantly limited in lifting and carrying," the evidence did not support Dr. Drucker's and Dr. Ibrahim's respective opinions that she had significant limitations in sitting and standing or walking. (*Id.*) Finally, the ALJ noted that Dr. Chakrabarti did not opine on plaintiff's functional limitations in connection with the consultative examination. (*Id.*)

At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform despite her restrictions. (*Id.* at 16.)

The testifying vocational expert, supplied with the above information, determined that plaintiff could perform the requirements of representative occupations such as furniture rental clerk, counter clerk, and surveillance system monitor. (*Id.*)  Accordingly, the ALJ found that plaintiff was not "disabled," and thus not entitled to benefits under the Act. (*Id.* at 17.)

## II.   The ALJ Failed to Fill in the Gaps Before Assigning "Little Weight" to the Opinions of Treating Physicians

Plaintiff contends that the ALJ failed to follow the treating physician rule when weighing the medical opinion evidence and that, as a result, the ALJ's RFC determination was not supported by substantial evidence.  (*See* ECF No. 12, Plaintiff's Memorandum in Support, at 11-14.)  The Commissioner contends that the ALJ properly discounted the treating physicians' opinions, which were either unsupported or inconsistent with evidence showing that certain of plaintiff's limitations were mild.  (ECF No. 14, Defendant's Memorandum in Support, at 7-10.)

Under the regulations in place at the time plaintiff filed her claim,[2] the ALJ was to "defer 'to the views of the

---

[2] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well-supported they are, and their consistency with the remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c.  Claims filed before March 27, 2017, however, are still subject to the treating physician rule.  *See id.* § 404.1527(c)(2).  Plaintiff filed her claim on October 8,

physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Green-Younger*, 335 F.3d at 106). "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's

---

2015.  Accordingly, the court applies the treating physician rule in the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129). The regulations also require that the ALJ "always give good reasons" in determining the weight assigned to the claimant's treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). The ALJ is not required to cite each factor explicitly in the decision but must apply the substance of the rule. *Halloran*, 362 F.3d at 32.

Here, the ALJ accorded "little weight" to the opinion of Dr. Diwan, a board-certified physician who treated plaintiff over the course of three years. The ALJ found that Dr. Diwan's opinion that plaintiff was totally disabled was "overly broad given the moderate objective findings and range of motion limitations," because Dr. Diwan's "exam notes appear[ed] consistent with a finding that [plaintiff] can lift and carry," and there was "no support in Dr. Diwan's notes for limitations on sitting, standing, or walking that would preclude light exertion." (Tr. at 15.)

The court agrees with the Commissioner that there was little support in the record for plaintiff's purported limitations on sitting, standing, and walking. The record

indicates that issues with plaintiff's spine were generally considered "mild," while the more severe limitations stemmed from issues with her left shoulder. (*See, e.g.*, *id.* at 291 (noting "[m]ild degenerative disk disease . . . in the thoracic spine").)  Moreover, Dr. Diwan's opinion that plaintiff was totally disabled was conclusory, and not dispositive. Contradictions in the record regarding Dr. Diwan's observed limitations on sitting, standing, and walking *could* provide a sufficient basis upon which to accord less weight to the opinion.

The existence of contradictions, however, do not end the court's inquiry.  It is well-established that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999)).  Here, there appear to be significant gaps in the record as to the limitations identified by the treating physicians regarding plaintiff's ability to sit and stand.

At a February 3, 2015 examination, Dr. Diwan noted "tenderness in the C4-C5, C5-C6 levels" of plaintiff's "cervical spine." (Tr. at 335.)  Dr. Diwan further observed that plaintiff's spine had 25-degree ranges of motion in all planes (with 45 degrees being normal).  (*Id.*)  There appears to be a gap between Dr. Diwan's opinion that plaintiff was totally

15

disabled, and that she was extremely limited in her ability to sit and stand (which was supported in part by the limited range of motion in her spine), and the other limited evidence in the record that the limitations of her spine were "mild." Before rejecting Dr. Diwan's opinion, the ALJ should first have attempted to fill the gap created by the relatively limited evidence in the record regarding plaintiff's spine.

In addition to Dr. Diwan, Dr. Drucker, a board-certified physician, and Dr. Ibrahim, a physical therapist, were plaintiff's treating physicians for three years and one year, respectively. (Stip. at 5-8.) The ALJ accorded Dr. Drucker's and Dr. Ibrahim's opinions "little weight," finding that "even though [plaintiff] would be significantly limited in lifting and carrying due to her shoulder pain, the mild evidence regarding her spine impairment d[id] not support the degree of limitation of limitation in sitting, standing, and walking." (Tr. at 15.) Again, the evidence of plaintiff's mild spine impairments *could* provide a valid basis upon which to discount the physicians' opinions. But the ALJ must first affirmatively attempt to fill the gap.

Given the length of treatment by the treating physicians, the ALJ should also consider whether something more than "little weight" should be accorded to the treating physicians' opinions. *See Harris v. Berryhill*, No. 17-cv-3968,

2018 WL 3966237, at *1 (E.D.N.Y. Aug. 17, 2018) (treating physicians' assessments are "entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources") (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Because there is no indication that the ALJ affirmatively attempted to fill in the gaps in the record before rejecting the opinions of treating physicians, the court cannot find that the ALJ's RFC determination was supported by substantial evidence. Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82-83 (quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. On remand, if the ALJ determines that the opinions of Dr. Diwan, Dr. Drucker, and Dr. Ibrahim are entitled to less than controlling weight, the ALJ must provide sufficiently "good reasons" for discounting the evidence underlying their opinions, and more thoroughly explain how the record evidence contradicts their findings regarding plaintiff's spine.

## III. The ALJ Provided an Improper Hypothetical to the Vocational Expert

The ALJ also erred by presenting a hypothetical to the testifying vocational expert that presumed that plaintiff was able to perform light work.

At the last step of the disability determination, the Commissioner has the burden to prove that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  In relying on a vocational expert's testimony to satisfy this burden, posing a "hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony."  *Gray v. Astrue*, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009); *see also De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("In positing hypothetical questions to the vocational consultant," the ALJ must "present the full extent of [the claimant's] disabilities.").

In this case, the ALJ posed hypothetical questions to the vocational expert that were based on the premise that the hypothetical claimant could perform "light work."  (Tr. at 54 ("I'm going to ask you to assume that [the hypothetical claimant] can do light work.").)  Such a hypothetical failed to

18

incorporate the limitations observed by plaintiff's treating
physicians, and which were also corroborated elsewhere in the
record.  *See Melligan v. Chater*, 1996 WL 1015417, at *8
(W.D.N.Y. Nov. 14, 1996) ("In order to rely on a vocational
expert's opinion: 'the hypothetical question posed to a
vocational expert must fully set forth a claimant's
impairments.'") (quoting *Totz v. Sullivan*, 961 F.2d 727, 730
(8th Cir.1992)).  While the ALJ did go on to note certain of
plaintiff's limitations (*see id.* at 54-56), the presumption that
plaintiff could perform "light work" did not fully account for
all of the limitations in the record, and rendered the
hypothetical flawed from the outset.  Indeed, the definition of
"light work" includes "frequent lifting or carrying of objects
weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  Even if
the ALJ properly rejected the medical opinions regarding
plaintiff's spine, the limitations shown in her shoulder
suggested that she would likely not be able to "frequent[ly]"
lift or carry ten pounds.

        The court recognizes that, later in the hypothetical,
the ALJ did note plaintiff's inability to lift ten pounds.  (*See*
Tr. at 54-55.)  The court, however, cannot find that the
vocational expert's testimony provided substantial support for
the ultimate conclusion that plaintiff could perform certain
kinds of work, because it was based on a hypothetical premised

on the unsupported assumption that plaintiff could perform
"light work."  The ALJ should have accounted for plaintiff's
limitations without any reference to an ability to perform light
work in the hypothetical.

## Conclusion

For the reasons stated above, plaintiff's motion for
judgment on the pleadings is GRANTED, and defendant's cross-
motion for judgment on the pleadings is DENIED.  This action is
REMANDED for further proceedings consistent with this Memorandum
and Order.  The clerk of court is respectfully directed to enter
judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          October 19, 2020

                                    _____/s/_____
                                    HON. KIYO A. MATSUMOTO
                                    United States District Judge